UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OTIS ELEVATOR COMPANY<br>    Plaintiff; | ) )<br>) | Docket No. |
| | ) | |
| v. | ) )<br>) | |
| LOCAL 4, INTERNATIONAL UNION<br>OF ELEVATOR CONSTRUCTORS;<br>MICHAEL LANGER, INDIVIDUALLY,<br>and as BUSINESS MANAGER;<br>KEVIN McGETTIGAN, INDIVIDUALLY,<br>and as BUSINESS REPRESENTATIVE;<br>STEVE MORSE, INDIVIDUALLY, and<br>as BUSINESS REPRESENTATIVE;<br>and all others conspiring, acting in concert<br>or otherwise participating with them or<br>acting in their aid or behalf, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 04 - 10966 JLT<br><br><br>May 14, 2004 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF PLAINTIFF, OTIS ELEVATOR COMPANY, IN SUPPORT OF
ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY AND PERMANENT INJUNCTION**

This memorandum is submitted by Plaintiff, Otis Elevator Company (hereafter "Otis" or

the "Company"), in support of its application for a temporary restraining order, order to arbitrate

and preliminary injunction pursuant to Section 301(a) of the Labor-Management Relations Act,

29 U.S.C. § 185(a). The Company asks this Court to enjoin the Defendant Local 4, International

Union of Elevator Constructors ("Local 4"), its officers, agents, representatives and members

from continuing or engaging in, or threatening to engage in, any strike, work stoppage, refusal to

work, slowdown, sit-down or sabotage against the Company and, further, to order the parties to

arbitrate the dispute which exists between them.

DOWNS
RACHLIN
MARTIN PLLC

The underlying dispute – the use of so-called installation nuts or "nut-serts"– is clearly arbitrable under the collective-bargaining agreement in effect between the Company and the Union. Indeed, Local 4 has filed a grievance over the use of nut-serts in the past. In this instance, however, Local 4 is refusing arbitration and decided instead to stage an unlawful work stoppage. The conduct of the Union and the other Defendants breaches the express provisions of the no-strike clause contained in the applicable collective-bargaining agreement and is causing Otis irreparable injury. This Court should, therefore, enjoin the Defendants from violating the Otis Agreement and order the parties to arbitrate pursuant to their Agreement.

## I.    INTRODUCTION

### A.    The Parties and Their Bargaining Relationship

The Company is engaged in the business of constructing, modernizing, repairing and servicing elevators and escalators throughout the United States. The International Union of Elevator Constructors (the "IUEC") represents elevator constructor Mechanics, Helpers, and Apprentices employed by Otis; IUEC Local 4 ("Local 4") represents elevator constructor Mechanics, Helpers, and Apprentices employed by Otis in the Boston, Massachusetts area.

Since 1987, Otis has entered into a series of five-year collective-bargaining agreements with the IUEC, "for and on behalf of its affiliated local unions . . . ." The most recent agreement between Otis and the IUEC became effective on July 9, 2002, and will remain in full force and effect through July 8, 2007 (the "Otis Agreement").[1] The Agreement covers the terms and conditions of employment of Elevator Mechanics, Helpers and Apprentices employed by Otis throughout the United States (except New York City and Vicinity which is covered by a separate agreement with IUEC Local 1).

---

[1] A copy of the Otis Agreement is attached as Exhibit A to the Verified Complaint.

DOWNS
RACHLIN
MARTIN PLLC

2

The Otis Agreement expressly prohibits strikes and concerted refusals to work during the term of the Otis Agreement (Article XIV, Paragraph 1), and provides that any difference or dispute regarding the application and construction of the Otis Agreement shall be resolved under the Agreement's grievance and arbitration procedures (Article XVI). [2]

### B.    The Current Dispute

Otis has a contract with Corjen Construction ("Corjen") to install two elevators at Bentley College in Waltham, Massachusetts (the "Bentley job"). Verified Complaint ¶ 18. Corjen is a valued Otis customer with whom currently Otis has other construction projects. Declaration of Jim Cummings ("Cummings Dec.") at ¶ 9. In addition, Otis has numerous other construction projects currently under way in the greater Boston area, including at the Delta Airlines terminal at Logan Airport, the Boston Opera House, Charles River Plaza and other locations. Verified Complaint ¶ 38.

A dispute has arisen between Otis and Business Agents of Local 4 involving the use of "nut-serts" on elevator doors at the Bentley job. This dispute has resulted in a work stoppage by Otis' employees on this project. Worse, Local 4's interruption of Otis' operations has now spread to at least six other construction sites in the Boston area. Local 4 has now ordered all Probationary, First and Second year Apprentices with jurisdiction to refuse to work under penalty of Union discipline. Verified Complaint ¶ 32.

Local 4 agents, Business Manager Michael Langer and Business Representative Kevin McGettigan, claim that the mere presence of nut-serts on elevator doors at the Bentley job is

---

[2]    Significantly, the Otis Agreement is substantially the same as the Standard Agreements at issue in two cases cited in Section II of this Memorandum: (1) National Elevator Indus., Inc. v. International Union of Elevator Constructors, AFL-CIO, 776 F.2d 374, 376-77 (1st Cir. 1985); and (2) Elevator Mfrs. Ass'n v. International Union of Elevator Constructors, 342 F. Supp. 372, 373 (S.D.N.Y. 1972). In both decisions, the employer successfully obtained an injunction against an illegal work stoppage. Otis was a member of the National Elevator Industry Inc. ("NEII") and Elevator Manufacturers Association of New York multi-employer associations until 1987.

DOWNS
RACHLIN
MARTIN PLLC                          3

improper under a "joint industry committee" decision restated in Appendix A, Par. 5 of the Agreement. That provision states that any drilling and tapping of elevator doors required to fasten Door Closer arms, lazy arms or relating arms to the doors must be performed by IUEC members at the construction site. The provision further states that if elevator doors are delivered to a job site, "pre-drilled or tapped for such devices . . ." the "doors will not be installed until a satisfactory settlement between the employer and the union is made." Agreement, App. A., Par. 5. Local 4 has contended that the presence of nut-serts on doors at the Bentley job and elsewhere violates this provision. Verified Complaint ¶ 23. However, as Otis has repeatedly told Local 4, the nut-serts on doors at the Bentley job are not used to fasten Door Closer arms, lazy arms or relating arms. Verified Complaint ¶ 24. Thus, the nut-serts do not violate App. A, Par. 5 of the Otis Agreement and Local 4 is not permitted to obstruct Otis' attempt to install doors at the Bentley job.

On or about May 13, 2004, the Otis employee/elevator constructor Mechanic and Apprentice assigned to the Bentley job informed Otis Construction Superintendent Jim Cummings that Local 4 Business Representative McGettigan had instructed them to refuse any instructions by Otis to install doors at the Bentley job. Verified Complaint ¶ 26. The employees stated that they were following Local 4's directions and they refused to proceed with elevator installation at the site. Id. Significantly, even though the sole basis articulated by Local 4 for its allegation that doors at the Bentley job were improper was its contention regarding the method of fastening the items specified in App. A, Par. 5 of the Agreement, employees were instructed to (and did) refuse to perform any work on doors, including work about which there is no dispute.

Local 4's interference with Otis' operations did not end with its shutdown of the Bentley job. In situations where Otis needs one or more additional qualified Mechanics but no qualified

DOWNS
RACHLIN
MARTIN PLLC                                              4

Mechanics are available, the Agreement provides that an Apprentice possessing appropriate qualifications may work as a "Temporary Mechanic" ("TM"). Otis frequently exercises its right under the Otis Agreement to employ Apprentices as TMs in the Boston, Massachusetts area and elsewhere. Verified Complaint ¶ 16. As of May 13, 2004, Otis was employing eight (8) TMs in the Boston area. Verified Complaint ¶ 17. Under Article X, Par. 4 of the Agreement, Local 4 is prohibited from withdrawing or failing to agree to allow Otis to employ TMs for the purpose of advancing the Union's position "with respect to a dispute unrelated to [Article X, par. 4]."

Nonetheless, later in the day on May 13, 2004, Local 4 members employed by Otis as TMs, informed Otis Superintendent Cummings that their permits to work as TMs were revoked by Local 4 "because Otis laid off a Mechanic" at the Bentley job. Verified Complaint ¶ 28. Also on May 13, 2004, Probationary, First and Second year Apprentices employed by Otis in Local 4's jurisdiction began reporting that Local 4 had directed them not to work because Otis had "laid off a helper." Verified Complaint ¶ 30, 32-33.

Again on the morning of May 14, 2004 at approximately 7:00 a.m., Otis Construction Superintendent Cummings directed employees to proceed with construction of elevators at the Bentley job. The employees refused. Verified Complaint ¶ 34. As a result, construction at the site has ground to a halt. Otis work at this project cannot go forward if Local 4 continues to prohibit employees from working as directed by Otis.

As a result of Local 4's interference with Otis' employment of TMs, Helpers and Apprentices at other construction sites in the greater Boston area, Otis' work at those sites is also disrupted. Otis' relationships with the construction contractors on these projects is threatened and will be severely damaged if the work stoppage continues. These contractors have deadlines

under their own agreements with the project owners that must be met or they face monetary

penalties. Otis would like to do future elevator work for these contractors.

## II.    ARGUMENT

### A.    This Court Has Jurisdiction To Enjoin Defendants' Violation Of The No-Strike Clause And To Order The Parties To Arbitrate

This Court has jurisdiction, pursuant to Section 301(a), Labor-Management Relations

Act, 29 U.S.C. § 185(a) (1970), to issue a temporary restraining order, a preliminary injunction,

and to order the parties to arbitrate. Section 301(a) provides:

> (a)    Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce as
> defined in this chapter, or between any such labor organizations, may be
> brought in any district court of the United States having jurisdiction of the
> parties, without respect to the amount in controversy or without regard to
> the citizenship of the parties.

In Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970), the United

States Supreme Court, overruling its earlier decision in Sinclair Refining Co. v. Atkinson, 370

U.S. 195 (1962), held that a federal court may enjoin a strike which is in breach of a no-strike

clause where the strike is over a grievance which is arbitrable under the collective-bargaining

agreement. The Court specifically held that the Norris-LaGuardia Act does not preclude the

issuance of an injunction in this situation. The Court reasoned that national labor policy would

be furthered if the parties submitted their dispute to the mutually agreed upon procedures set

forth in the collective-bargaining agreement. Specifically, the Court held:

> The Sinclair decision, however, seriously undermined the effectiveness of the
> arbitration technique as a method peacefully to resolve industrial disputes without
> resort to strikes, lockouts, and similar devices. Clearly employers will be wary of
> assuming obligations to arbitrate specifically enforceable against them when no
> similarly efficacious remedy is available to enforce the concomitant undertaking
> of the union to refrain from striking. On the other hand, the central purpose of the
> Norris-LaGuardia Act to foster the growth and viability of labor organizations is
> hardly retarded - if anything, this goal is advanced - by a remedial device that

DOWNS
RACHLIN
MARTIN PLLC

6

merely enforces the obligation that the union freely undertook under a specifically
enforceable agreement to submit disputes to arbitration.

398 U.S. at 252-53.

The Supreme Court established four prerequisites for obtaining an injunction against a
strike or threatened strike in violation of a collective-bargaining agreement:

1. There must be a collective-bargaining agreement presently in effect between the parties;

2. The strike or threatened strike must be in breach of a no-strike obligation under said agreement;

3. The strike must be over a grievance which both parties are contractually bound to arbitrate; and

4. The injunction must be warranted under ordinary principles of equity.

398 U.S. at 254. Each of these conditions is met in the instant case. See National Elevator

Indus., Inc. v. International Union of Elevator Constructors, 776 F.2d 374, 377-79 (1st Cir. 1985)

(granting Boys Markets injunction in a case involving Local 4); see also, Anheuser-Busch, Inc.

v. Teamsters Local No. 633, 511 F.2d 1097, 1099 (1st Cir. 1975).

1. There Is A Collective-Bargaining Agreement Between The Company And The Union That Contains Mandatory Grievance And Arbitration Procedures

There is no question in this case that Otis and the Unions are parties to a collective-

bargaining agreement that contains mandatory grievance and arbitration procedures. (Verified

Complaint Exh. A).

2. The Union Has Breached The No-Strike Provision In The Collective-Bargaining Agreement

The Union's order that Otis employees refuse to install elevators at the Bentley job as

directed by Otis constitutes a strike that violates the Agreement's clear and unambiguous no-

DOWNS
RACHLIN
MARTIN PLLC

7

strike clause. Article XIV, the "No Strike or Lockout" provision of the Agreement, reads in pertinent part:

> It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party.

It is beyond serious dispute that employees' refusal to work at the Bentley job is the result of an order from Local 4 and the Union has initiated, authorized and/or ratified after the fact, the unlawful work stoppage in furtherance of its position regarding nut-serts, a dispute which Otis and the Unions are bound to arbitrate pursuant to Article XV of the Agreement. Indeed, Local 4 Business Representative McGettigan had baldly admitted to Otis Superintendent Cummings that employees were not working at the Bentley job thanks to his instruction. Cummings Dec. ¶ 7. Local 4's actions clearly constitute a strike in violation of the Agreement's no-strike clause. The First Circuit agrees. National Elevator Indus., Inc. v. International Union of Elevator Constructors, 776 F.2d 374, 378 (1st Cir. 1985) (citing Elevator Mfrs. Ass'n of New York, Inc. v. Local 1 International Union of Elevator Constructors, 689 F.2d 382, 386 (2d. Cir. 1982)). See also Delta Elevator Servs. v. IUEC, Local 4 et al., Docket No. 02-12145DPW (November 1, 2002) (TRO issued by Judge Douglas P. Woodlock for illegal refusal to take calls at lunch) (copy attached).

It is also beyond serious dispute that Local 4's "knocking down" of TMs later in the day on May 13, 2004 was an improper attempt to increase strike pressure on Otis in furtherance of its dispute regarding the Bentley job. Local 4 is no stranger to this tactic. In National Elevator Indus., Inc. Local 4 "set back" all TMS employed by Otis in protest over Otis' decision to reduce the number of mechanics on a job site.[3] The First Circuit Court of Appeals correctly recognized

---

[3]    Ironically, Local 4's stated reason for "setting back" TMs in National Elevator Indus., Inc. is the same reason it purportedly gave TMs in this case – that Otis had allegedly "laid off a mechanic."

that Local 4's conduct in "setting back" TMs was a strike because it "effectively withdrew these employees from the skilled work they were doing. . ." National Elevator Indus., Inc., 776 F.2d at 378. Finally, Local 4's directive preventing Apprentices an Helpers from working, premised on the ruse that Otis "laid off" an apprentice, also is a breach of the no-strike clause.

>    3.    The Strike Is Over A Dispute That The Union And Otis Are Required To Arbitrate

The parties are bound by the Otis Agreement to arbitrate the underlying work jurisdiction dispute. Article XV contains comprehensive arbitration procedures for the settlement of "any difference or dispute regarding the application and construction of the Agreement" (emphasis added). Article IV establishes work that Mechanics and Helpers must perform, and includes the installation of elevator doors and other components.[4] The current dispute over the Local 4's objections to direction by Otis to install elevator doors is a "difference or dispute regarding the application and construction" of Article IV of the Agreement and, thus, subject to the mandatory grievance and arbitration procedures contained in Article XV. Indeed, Local 4 has already filed a grievance on the issue. Powilatis Declaration ("Powilatis Dec.") at ¶ 9.

>    4.    The Fourth Requirement Of Boys Markets, The Justification Of Injunctive Relief On The Basis Of Ordinary Principles Of Equity, Is Also Met

In Boys Markets, the Court cautioned lower courts not to grant injunctive relief unless the alleged contract breach has "caused or will cause irreparable injury to the employer; and . . . the employer will suffer more from the denial of an injunction than will the union from its issuance." Boys Markets, 398 U.S. at 235. Otis plainly meets this threshold.

A variety of factors have been held to constitute irreparable harm for purposes of a Boys Markets injunction. Where, as here, a work stoppage prevents an employer from performing contracts by required completion dates, the employer suffers irreparable harm. Elevator Mfrs.

---

[4]    Article IV, Par. 9 states "no restrictions shall be imposed as to methods, tools, or equipment used."

Ass'n v. International Union of Elevator Constructors, 342 F. Supp. 372, 373 (S.D.N.Y. 1972).

Findings of irreparable harm have also been made where the unlawful strike has caused

operations to be shut down or production to be interrupted.  See Otis Elevator Co. v. Local 1,

IUEC, 684 F. Supp. 80, 80-82 (S.D.N.Y. 1988)("work stoppages are likely to damage plaintiff's

business irreparably," including "lost goodwill" and "permanent loss of business"); Elevator

Mfrs .Ass'n of New York v. Loc. 1, IUEC, 689 F.2d 382, 386 (2d Cir. 1982).  Findings of

irreparable harm have also been made where the unlawful strike has caused operations to be shut

down or production interrupted.  See Gallagher Asphalt Corp. v. International Union of

Operating Eng'rs, Local 150, 967 F. Supp. 333, 337 (N.D. Ill. 1997) (irreparable injury found

where work stoppage brought construction project to a halt); U.S. Steel Corp. v. United Mine

Workers, 534 F.2d 1063, 1979 (3d Cir. 1976); Hilton Int'l Co. v. Asociacion De Empleados De

Casino De Puerto Rico, 324 F. Supp. 492, 494 (D.P.R. 1971).

Similarly, where, as here, a work stoppage prevents employers from performing

contracts, the resulting loss of business and consequent damage to the employer's reputation has

been held to constitute irreparable harm.  National Elevator Indus. Inc. v. IUEC, 776 F.2d 374,

378 (1st Cir. 1985) (irreparable harm shown where work stoppage resulted in damage to

reputation); Gallagher Asphalt Corp., 967 F. Supp. at 337 (irreparable harm where work

stoppage is likely to continue at great economic harm to employer); Airborne Freight Corp. v.

International Bhd. of Teamsters, Local 705, 216 F. Supp. 2d 712 (N.D. Ill. 2002) (irreparable

injury could be shown by loss of reputation and good will caused by the work stoppage);

Elevator Mfrs. Ass'n, 342 F. Supp. at 373 (injunction issued when employer alleged that work

stoppage will prevent performance of contracts by required completion dates); Ciba-Geigy Corp.

v. Local No. 2548, United Textile Workers of America, AFL-CIO, 391 F. Supp. 287, 293 (D.R.I.

1975) (irreparable harm where work stoppage is likely to continue at great economic harm to

employer); <u>Educational and Recreational Servs., Inc. v. United Steelworkers of America, Local</u>

<u>8751</u>, 1980 WL 2165 at *3  (D. Mass. October 29, 1980) (contractual liabilities for money

damages for terminating underlying contract together with the difficulty of ascertaining

damages amounted to irreparable harm).

The current work stoppage has caused and continues to cause irreparable damage to the

Company's goodwill, reputation and commercial relationships within the industry.  Otis has a

contractual obligation to complete installation of elevators at the Bentley job site in a timely

manner.  In addition, Local 4's interference with Otis' employment of TMs, Helpers and

Apprentices is threatening Otis' ability to timely complete construction work on at least six other

projects in Boston, including time sensitive and high profile projects at Logan Airport and

Boston Opera House.

Thus, unless the relief sought herein is granted, substantial and irreparable injury to Otis,

its customers, the property owners, and other third parties will follow.  The unlawful work

stoppage is preventing Otis from fulfilling its contractual obligations and threatening Otis's

reputation and good will with customers

Finally, the balance of harms decidedly tips in Otis' favor.  The Company has followed

all of its contractual obligations in good faith and will suffer severe damage and loss of goodwill

if this Court fails to grant the requested injunctive relief.  Conversely, interim equitable relief in

favor of the Company will cause the Union no injury whatsoever.  The Union merely will be

"held to its agreement to arbitrate this dispute without recourse to a work stoppage."  <u>New York</u>

<u>Times Co. v. NMDU</u>, 592 F. Supp. 1043, 1051 (S.D.N.Y. 1984).  The arbitrator can provide an

appropriate remedy for any contractual violations.  Clearly, "[t]he effect on the [U]nion if

DOWNS
RACHLIN
MARTIN PLLC                              11

[injunctive relief] is granted is less onerous than the harm which [will] be suffered by the [Company] if the injunction is not granted." Boys Markets, 398 U.S. at 235; see also National Elevator Indus., 776 F.2d at 378 (neither the union nor individual defendants suffered harm as a result of the injunction).

Since all of the requirements for equitable relief have been satisfied in this case, this Court should enjoin the Defendants' activities. These activities violate the no-strike clause in the Otis Agreement, concern a grievance that the parties are bound to arbitrate and are causing irreparable harm to Otis.

## III.    CONCLUSION

For all of the foregoing reasons, this Court should enjoin Defendants from violating the collective-bargaining agreement, order the parties to arbitrate pursuant to said Agreement, and order other relief as requested in the Complaint.

Respectfully submitted,

Dated at Boston, Massachusetts
May 14, 2004

MORGAN BROWN & JOY, LLP

By: _____
      Nathan L. Kaitz (BBO #256760)
      One Boston Place, 16th Floor
      Boston, MA 02108
      T.  (617) 523-6666
      F.  (617) 367-3125
      Email  nkaitz@morganbrown.com

DOWNS
RACHLIN
MARTIN PLLC

12

By: _____

Timothy E. Copeland Jr., Esq.
DOWNS RACHLIN MARTIN PLLC
80 Linden Street
PO Box 9
Brattleboro, VT  05302-00009
(802) 258-3070

ATTORNEYS FOR OTIS ELEVATOR
COMPANY

BRT.52620.1

DOWNS
RACHLIN
MARTIN PLLC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DELTA ELEVATOR SERVICES )
CORPORATION d/b/a DELTA )
BECKWITH ELEVATOR COMPANY )
    Plaintiff; )
                            ) Docket No.
                            )
v. )
                            )
LOCAL 4, INTERNATIONAL UNION )
OF ELEVATOR CONSTRUCTORS; )
MICHAEL LANGER, INDIVIDUALLY, ) **02 - 12145 DPW**
and as BUSINESS REPRESENTATIVE )
STEVE SAMPSON, INDIVIDUALLY, )
and as BUSINESS MANAGER; )
and all others conspiring, acting in concert )
or otherwise participating with them or ) November 1, 2002
acting in their aid or behalf, )
                            )
    Defendants. )

## ORDER TO SHOW CAUSE AND
## TEMPORARY RESTRAINING ORDER

Upon the Summons and Verified Complaint herein dated November 1, 2002 and good

cause appearing therefore, it is hereby:

ORDERED that the Defendants, their officers, agents, representatives, members,

employees and attorneys, and all persons in active concert or participation with them, appear

before the Honorable _Douglas P. Woodlock_ a Judge of this Court in the United States Courthouse

located at One Courthouse Way, Boston, Massachusetts on the ___1st___ day of _November_ at

_10:00_ o'clock a.m./p.m., or as soon thereafter as counsel can be heard, to show cause why this

Court should not enter an order granting Plaintiff a preliminary injunction, to be effective during

the pendency of this action, for the relief sought in the Verified Complaint, pursuant to Federal

Rule of Civil Procedure 65 and the Labor-Management Relations Act, 29 U.S.C. § 185; and

~~Plaintiff shall file and serve any and all supporting papers on or before~~ *Noon, Oct. 6, 2004* ; and

Defendants shall file and serve any and all opposing papers on or before *12 noon , November 6,* ~~2004~~

It appearing, as more fully set forth in the aforementioned Verified Complaint and

Declarations, that by striking over disputes that are subject to final and binding arbitration

pursuant to a collective bargaining agreement, Defendant Local 4 International Union of

Elevator Constructors, and its officers, agents and representatives, and all those in concert and

participation with them, have violated such collective bargaining agreement and have

substantially impeded and interfered with the Plaintiff's ability to fulfill its contractual

obligations to respond to service calls including calls for emergency service with immediate,

substantial, and irreparable injury, loss and damage to:

    a.    Plaintiff by preventing said company from fulfilling its contractual

obligations, exposing the company to potential termination of favorable contractual

relationships and loss of reputation and good will with its customers;

    b.    Plaintiff's customers; and

    c.    members of the public;

And it further appearing to the Court from the Verified Complaint and Declarations

above-mentioned, that a temporary restraining order preliminary to the hearing upon Plaintiff's

application for a preliminary injunction should issue because of the unlawful acts alleged; that

such unlawful acts by Defendants have already occurred and are openly threatened to continue;

that such unlawful acts will likely continue to occur prior to said hearing date unless restrained

by an order by this Court; that such acts have caused and will continue to cause immediate and

irreparable loss or damage to the Plaintiff before the hearing can be held on Plaintiff's

application for a preliminary injunction; in that said acts have and will continue to seriously

- 2 -

disrupt Plaintiff's business, cause Plaintiff to fail to meet business commitments, caused Plaintiff

to fail to fulfill its contractual obligations to respond to service calls in a timely manner, and

cause substantial damage to Plaintiff's business and reputation; that damages to Plaintiff and

others resulting from such unlawful acts cannot be fully estimated or compensated in money, and

that because thereof, the damages which Plaintiff will so sustain will be immediate, substantial,

and irreparable for which Plaintiff has no adequate remedy at law; and Plaintiff having made no

previous application for the relief requested herein, it is hereby:

ORDERED that pending the determination of this application for a preliminary

injunction or for a period not to exceed _____ days or until the _7th_ day of _November_ at

_5_ o'clock a.m./p.m., or as soon thereafter as counsel can be heard, unless this order be

dissolved prior thereto or extended, then or thereafter, whichever is sooner:

Defendants, their officers, agents, representatives, members, employees and attorneys,

and all persons in active concert or participation with them having notice from any source or in

any manner of the entry of this order be and hereby are enjoined and

(1)      restrained from calling, causing, inducing, encouraging, authorizing, conducting,

continuing in or engaging in any strike, concerted work stoppage, concerted work slow down,

sit-down or any other act of coercion or interference with Plaintiff's normal operations including

but not limited to disabling communications devices or otherwise refusing to respond to service

calls;

(2)      by Union discipline, penalty or otherwise restrained from interfering with or

inducing or attempting to induce any person to interfere with any employee or agent of Plaintiff

in the course of any such employee's or agent's work for Plaintiff;

- 3 -

(3)    by threats or otherwise, restrained from interfering with or inducing or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiff's business and from taking any action which would interfere with this Court's jurisdiction in the premises;

(4)    restrained from causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiff's normal operations prior to the hearing of Plaintiff's application for a preliminary injunction;

(5)    directed to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 4 International Union of Elevator Constructors ("Local 4") and the issuance forthwith of appropriate notices or other communications to the members, officers and agents of Defendants, and all those in active concert with them, requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendant Local 4 and rescinding any oral or written notices, orders, directions, or requests to employees of Plaintiff authorizing, directing, inducing or encouraging any strike, slow down, work stoppage or other limitation upon production; and

(6)    directed, together with Plaintiff, forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiff and Defendants, the present dispute between them regarding holiday pay.

And, it is hereby further ordered, that Plaintiffs shall post a bond in the amount of $ 5,000 , conditioned as required by law, no later than *noon* , *November 4, 2000* at ———— o'clock a.m./p.m.

- 4 -

~~And, it is hereby further ordered, pursuant to Rule 6(d) of the Federal Rules of Civil Procedure that service of this Order to Show Cause and Temporary Restraining Order and a copy of the papers upon which they are granted, if made on or before ____ o'clock a.m./p.m. on [month/day/year] shall be deemed sufficient service thereof.~~

_November, zero    3:30 p.m._                    _Wilm P. Woodlow_
Date          Time                              Presiding Judge


BRT/42544.1


_Counsel for the defendants has agreed to accept service._