# SEGAL, ROITMAN & COLEMAN

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
JACQUELINE M. NUNEZ

\* Also Admitted to the
New Hampshire Bar

\*\*Also Admitted to
the California Bar

ROBERT M. SEGAL (1915-1999)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

May 18, 2004

**HAND DELIVERED**

Zita Lovett, Clerk
United States District Court
U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  **Otis Elevator Company v. Local 4, IUEC
Docket No. 04-10966-JLT**

Dear Ms. Lovett:

Late Monday afternoon I received a message from counsel for Otis Elevator to the effect that a draft restraining order prepared by plaintiff's counsel had been forwarded to the Court for Judge Stearns signature. At the time I received that message I had not reviewed the Company's draft. I have enclosed herewith a draft order that I had proposed and faxed to plaintiff's counsel Monday morning.

One objection to the plaintiff's draft is that it does not make reference to the "satisfactory settlement" required for the installation of doors under Appendix A, par. 5. The "ten minutes per hole" settlement was accepted by the court as the tentative basis for installing the doors pending an arbitrator's decision on the applicability of Appendix A, par. 5 to the specific doors on the Bentley jobsite. Otis' draft makes no mention of this settlement and, instead, purports to empower the arbitrator to create a remedy. This is not what the collective bargaining agreement says and it is not what Judge Stearns said last Friday.

       Other objections to plaintiff's draft concern paragraphs 5 and 6 of Otis' proposal.[1] Regarding paragraph 5 I am not aware of any support in the discussions between counsel or with Judge Stearns or any support in the law that provides that a plaintiff in a <u>Boys Markets</u> action should be able to recover from the defendant the cost of procuring the bond. Regarding paragraph 6 of Otis' Order, Otis is entitled only to have the Local observe the No Strike clause. Paragraph 6 contains overbroad restraining order language that is designed to communicate to the Otis employees that the Court has aligned itself with the Company against Local 4. As Local 4 did not perceive that to be the outcome of the TRO hearing Local 4 objects to the language of Otis' paragraph 6.[2]

       If the Court is inclined to adopt any of Otis' restraining language, Local 4 points out that the Norris LaGuardia Act requires a bond to protect a defendant such as Local 4, from a wrongfully issued injunction. Thus, if the Court is inclined to grant the relief contained in paragraph 6 of Otis' draft Order Local 4 contends that payment under the bond should be triggered if an Arbitrator awards a favorable order to Local 4 not only for the "satisfactory settlement" required under Appendix A, paragraph 5 but also for the fees incurred by Local 4 in defending this suit.[3] The comparatively simple language proposed by the Union was designed to recognize that Otis' precipitous "layoff" of the two employees who were engaged in protected activity by refusing to install the doors in the absence of a "satisfactory settlement" had triggered the problem for which it sought judicial protection.

                                                    Very truly yours,

                                                   Paul F. Kelly

PFK/jas
Cc: Mary Johnson, Dep. Clerk
Michael Langer, Bus. Agent
Timothy Copeland, Esq.
Nathan Kaitz, Esq.

---

[1] The draft I received had no paragraphs 2 and 3.

[2] Paragraph 6(e) imposes a gratuitous burden on the Union to notify Otis employees of Otis' court success.

[3] The language of Norris LaGuardia Act, 29 U.S.C. §107 provides: "No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court."